ORDERED.

**Dated:  January 20, 2023**

_Caryl E. Delano_

Caryl E. Delano
**Chief** United States Bankruptcy Judge

### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION
### www.flmb.uscourts.gov

In re:                                                          Case No. 2:21-bk-00123-FMD
                                                                Chapter 13

Gregory Brian Myers,

      Debtor.

_____/

### MEMORANDUM OPINION
### <u>DENYING CONFIRMATION AND DISMISSING CASE</u>

THIS CASE came before the Court on January 19, 2023, on the Seventh Continued

Confirmation Hearing of Debtor's Third Amended Chapter 13 Plan (Doc. No. 206), the

objections to the Plan filed by Naples Golf & Beach Club, Inc., and U.S. Bank National

Association, as Trustee for Credit Suisse First Boston Mortgage Acceptance Corp. CSFB

Mortgage-Backed Pass-Through Certificates, Series 2005-11 ("U.S. Bank/Credit

Suisse") (Doc. Nos. 244 and 248), and _Debtor's Rule 59(e) Motion to Reconsider Order_

_Granting in Part and Denying in Part Debtor's Emergency Motion for Temporary Stay [Doc._

_354], and Order Granting in Part and Denying in Part Debtor's Motion for Enlargement of_

*Time [Doc. 358]* (Doc. No. 360) (the "Motion for Reconsideration"). For the reasons that follow, the Court will deny the Motion for Reconsideration, deny confirmation of Debtor's Chapter 13 plan because it was not filed in good faith, and dismiss the case with a two-year bar against refiling.

## I.    BACKGROUND

On January 28, 2021, Debtor, Gregory Myers, filed a voluntary petition under Chapter 13. In his petition, Debtor disclosed that he previously filed three bankruptcy cases:  Case No. 19-10392 in Delaware; Case No. 19-17428 in Maryland; and Case No. 15-26033 in Maryland.[1]

Although Debtor's discharge was denied in Maryland Bankruptcy Case No. 15-26033, it remains a pending Chapter 7 case. In addition, on June 19, 2022, Debtor filed a bankruptcy petition in the District of Columbia on behalf of an entity known as 1712 Property Holding Trust. Debtor signed the petition as Trustee of the "common law trust." The case was dismissed on July 1, 2022, for failure to pay the filing fee. (Doc. No. 285, p. 45.)

Shortly after he filed this case, Debtor filed his bankruptcy schedules. (Doc. No. 29.) Debtor listed ownership interests in real property with a total value of $11.5 million, which he claimed exempt as tenants by the entireties properties.

---

[1] Debtor's wife, Barbara Kelly, has also filed bankruptcy cases:  Case No. 18-13244 in Maryland, and Case No. 18-7142 in the Middle District of Florida.

Debtor also filed a Chapter 13 plan (Doc. No. 28) that provided for a single payment of $10.00 and the treatment of "Claims Secured by Personal Property" as follows:

> All creditors claiming a lien(s) against Debtor's interest in any property are disputed by Debtor and subject to pending litigation as noted in Addendum and Debtor is not personally liable for any of them.

No addendum was attached to Debtor's plan, but on the same day that he filed the plan, Debtor filed an Addendum that was docketed by his attorney as an "Addendum to Schedules and Statement of Financial Affairs." (Doc. No. 30.) The Addendum stated that Debtor held claims against a list of 43 named parties (including the Chapter 7 trustee, attorneys, and law firms in his pending Maryland bankruptcy case), and that he was a party or intervenor in 19 lawsuits pending in Maryland, Florida, and the Fourth Circuit Court of Appeals.

On May 10, 2021, Debtor filed his First Amended Plan. (Doc. No. 76.) The First Amended Plan provided for payments of $200.00 per month for 36 months, the same treatment of claims secured by personal property as provided in the original plan, and payments to unsecured creditors of not less than $6,545.52.

On November 17, 2021, Debtor filed his Second Amended Chapter 13 Plan. (Doc. No. 135.) The Second Amended Plan provided for Debtor to pay $200.00 per month for months 1 through 10 and $1,049.00 for months 11 through 36 and for

unsecured creditors to be paid 100%. Unlike his first two plans, the Second Amended Plan did not include a provision for claims secured by personal property.

Brian and Cristina King and U.S. Bank/Credit Suisse filed motions to dismiss Debtor's case on the ground that it was filed in bad faith. (Doc. Nos. 58, 183, and 187.) The Court denied the Kings' motion at a May 13, 2021 hearing (Doc. No. 88) and denied U.S. Bank/Credit Suisse's motion because the Second Amended Plan proposed to pay unsecured creditors 100% of their claims, which appeared to the Court to be a good-faith basis for Debtor to remain in Chapter 13. (Doc. No. 212; Doc. No. 219, pp. 41-44.)

On June 8, 2022, Debtor filed his Third Amended Plan (Doc. No. 206) (the "Plan"). The Plan again provides for payment of $200.00 for 10 months and $1,049.00 for months 11 through 36 and for payment of 100% to unsecured creditors. The Plan does not provide for payment of any priority or secured claims.

Section A of the Plan, titled "Notices," discloses that the Plan provides for the "[a]voidance of a judicial lien or nonpossessory, nonpurchase money security interest under 11 U.S.C. § 522(f). A separate motion will be filed. See Section C.5(e)." Section C.5(e) of the Plan describes a judicial "lien" on funds held in the Court Registry of the

Maryland Bankruptcy Court and refers to an attached list of 15 "liens" to be avoided under § 522 of the Bankruptcy Code[2] or resolved through avoidance actions.

One of the alleged "liens" that Debtor proposes to avoid is an Amended Summary Final Judgment entered in a state court lawsuit—that Debtor filed postpetition—against Naples Golf and Beach Club, Inc., and others. In the judgment, the state court denied all of Debtor's claims and discharged a lis pendens filed by Debtor. (Doc. No. 206, p. 10; Doc. No. 244, pp. 75-97.)

Debtor's case has now been pending for nearly two years. During this time, the Court has conducted seven hearings to consider confirmation of the various iterations of Debtor's plan:  on May 13, August 26, and November 18, 2021, and February 10, March 24, June 9, and August 25, 2022.

Interested party Naples Golf & Beach Club, Inc., and four parties collectively referred to as the "Naples Property Holding Parties" filed objections to confirmation of the Plan, alleging Debtor filed the Plan in bad faith. (Doc. Nos. 244 and 249.) U.S. Bank/Credit Suisse also objected to confirmation. (Doc. No. 248.)

At the August 25, 2022 confirmation hearing, the Court set a November 1, 2022 deadline for Debtor to either amend the Plan to eliminate the lien avoidance provision or file motions to avoid liens and continued the confirmation hearing to

---

[2] Unless otherwise stated, statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

December 1, 2022. On October 12, 2022, Debtor's counsel filed a motion for leave to withdraw (Doc. No. 294), which the Court granted on October 27, 2022 (Doc. No. 305).

At Debtor's request, the Court extended the November 1, 2022 deadline for filing an amended plan or motions to avoid liens to January 5, 2023, and continued the confirmation hearing from December 1, 2022 to January 19, 2023. (Doc. No. 313.) Debtor requested an additional enlargement of time and the continuance of the January 19, 2023 confirmation to a date after March 1, 2023 (Doc. No. 355) (the "Motion for Enlargement.") The Court granted the Motion for Enlargement in part and extended the January 5, 2023 deadline to January 12, 2023. However, the Court denied Debtor's request to continue the confirmation until after March 1, 2023. (Doc. No. 358.) Debtor filed the Motion for Reconsideration. (Doc. No. 360.)

Other relevant activity in the case includes the following:

1.      Although Debtor's Plan purports to pay 100% to his unsecured creditors (Doc. No. 206, p. 6), Debtor filed objections to each of the five proofs of claim filed in the case. (Doc. Nos. 69, 84, 89, 110, and 342.) The IRS (Claim No. 1) has now filed an amended claim in the amount of "$0.00." The Court sustained Debtor's objections to Claim No. 2 of Moore Hill & Westmoreland and Claim No. 3 of Brian and Cristina King. U.S. Bank filed Claim No. 5 as a secured creditor, but the Plan does not provide for payment to secured creditors. (Doc. No. 164.) The only potential remaining claim is Claim No. 4 of Dunlap Bennett & Ludwig PLLC, which was filed as an unsecured

claim for legal fees in the amount of $26,629.50. The claim was filed without supporting documentation, and Debtor objected to the claim as not being filed before the claims bar date. (Doc. No. 342.)[3]

2.      The Plan does not provide for payment of U.S. Bank/Credit Suisse's 2015 final judgment of foreclosure against Debtor's Naples, Florida residence in the amount of $2,753,490.90 (Doc. No. 274-1, Exhibit B, pp. 20-64). On September 21, 2022, the Court determined that under the Court's Administrative Order FLMB-2020-7, the automatic stay is not in effect as to the Naples property because the Plan does not provide for payment of the secured claim. (Doc. No. 286.) Debtor appealed. (Doc. No. 303.)

3.      Debtor filed a motion to avoid U.S. Bank/Credit Suisse's interest in funds held in the registry of the Maryland Bankruptcy Court as a "judicial lien" on exempt tenants by the entireties property.[4] (Doc. Nos. 117 and 131.) Under a *Consent Order on Motion for Relief from Automatic Stay* entered by the Maryland Bankruptcy Court (Doc. No. 160) (the "Consent Order"), Debtor had agreed to pay funds into the court registry as adequate protection payments while Debtor appealed U.S. Bank/Credit

---

[3] Dunlap Bennett & Ludwig PLLC filed a response to Debtor's objection (Doc. No. 363) arguing that it did not receive notice of the bankruptcy in order to timely file its proof of claim.

[4] Under § 522(f)(c), the bankruptcy court may avoid a judicial lien on the debtor's interest in property to the extent that the lien impairs an exemption to which the debtor would have been entitled.

Suisse's foreclosure judgment of his Naples, Florida home to Florida's Second District Court of Appeals. Debtor and U.S. Bank/Credit Suisse agreed that whoever prevailed on the appeal would be entitled to the funds; U.S. Bank/Credit Suisse prevailed on the appeal. This Court denied Debtor's motion to avoid the "lien" on the grounds that the Consent Order did not create a judicial lien that was subject to avoidance under § 522(f)(1). (Doc. No. 210.) Debtor filed a motion for reconsideration, which the Court also denied. (Doc. Nos. 215 and 220.) Debtor appealed. (Doc. No. 230.)

4.    Debtor filed a motion to avoid an "Order Discharging Lis Pendens of Record" on property located in Walton County, Florida (the "Walton County Property") as a judicial lien under § 522(f). (Doc. No. 321.) Debtor asserts that he recorded a notice of lis pendens in a state court action he filed against Walton County, Florida, The St. Joe Company, and Watercolor Development, LLC, and that in June 2021, the state court entered an *Order Granting the St. Joe Company and Watercolor Development, LLC's Motion to Discharge Wrongful Lis Pendens, Discharging Lis Pendens of Record, and Denying Plaintiff's Request for Stay.* (Doc. No. 321-1.) Watercolor Development objected to the motion arguing the Walton County order discharging the lis pendens is not a judicial lien under § 522(f). (Doc. No. 337.) At the January 19 hearing, the Court denied Debtor's motion because a court order discharging a lis pendens filed by the debtor in a lawsuit that he initiated is not a judicial lien under § 522(f). The Court further finds that Debtor's motion was frivolous.

5.      Debtor filed a second motion to avoid a lien against Walton County, Florida, The St. Joe Company, and Watercolor Development, LLC, seeking to avoid "the lien that was created by the recording of the plat identified as the "Park District of Watercolor" on the Walton County Property as a judicial lien under § 522(f). (Doc. No. 347.) Watercolor Development objected to the motion arguing the recordation of a platting document (the "Platting Document") is not a judicial lien under § 522(f) and that Debtor does not own the Walton County Property. (Doc. No. 363.) At the January 19 hearing, this Court denied Debtor's motion because the recording of a platting document is not a "judicial lien" under § 522(f). The Court further finds that Debtor's motion was frivolous.

6.      Shortly before the January 19 hearing, Debtor filed an adversary proceeding against The St. Joe Company and Watercolor Development, Inc., related to his alleged ownership interest in he Walton County Property and seeking to avoid the Platting Document as a judicial lien. (Adv. Pro. No. 2:23-ap-003-FMD, Doc. No. 1.)

7.      Although Debtor's Plan does not provide for payment to U.S. Bank NA, Successor Trustee to Bank of America, NA, etc. ("U.S. Bank/BofA"), Debtor appealed this Court's order lifting the automatic stay *in rem* to allow U.S. Bank/BofA to proceed with its *2014* state court lawsuit to foreclose on property in Bethesda, Maryland (the "Bethesda Property"). (Doc. Nos. 165 and 226.)

8.      Debtor objected to U.S. Bank/BofA's proof of claim for amounts due on its mortgage on the Bethesda Property. (Doc. No. 110.) In his bankruptcy schedules, Debtor claims that he is a co-owner of the Bethesda Property (Doc. No. 29, p. 4), but he is not an obligor on U.S. Bank/BofA's mortgage. (Doc. No. 110.) The Court overruled Debtor's objection to U.S. Bank/BofA's proof of claim because the Plan does not provide for payment to U.S. Bank/BofA. (Doc. No. 164.) Debtor appealed. (Doc. No. 226.)

9.      On March 18, 2022—after he filed this Chapter 13 case—Debtor sued 3073 Horseshoe Drive, LLC, in the Circuit Court for Collier County, Florida (the "Collier County Action") based on events that allegedly occurred postpetition. On September 2, 2022, Debtor represented to Florida's Second District Court of Appeals in his *Response and Motion to Convert Appeal to a Petition for Writ of Prohibition* that the automatic stay under § 362 prohibited the state court from requiring him to post a $150,000.00 bond pending his appeal of the state court's ruling. (Doc. No. 285, pp. 58-66.) This Court entered an order confirming that the automatic stay does not apply to the Collier County Action. (Doc. No. 299.)

10.     On December 30, 2022, the Friday before the New Year's holiday weekend and two business days before a January 3, 2023 trial, Debtor removed two Maryland state court lawsuits involving the Kings—that had been pending since 2017 and 2018—to this Court. (Adv. Pro. Nos. 2:22-ap-048-FMD and 2:22-ap-049-FMD.)

More than nine months earlier, on March 14, 2022, the Kings had obtained relief from stay to prosecute the Maryland actions against non-debtor parties—*but not against Debtor*.[5] The Court granted the Kings' emergency motions for remand. (Doc. No. 4 in both proceedings.) Debtor appealed the Court's rulings. (Doc. No. 6 in Adv. Pro. No. 2:22-ap-048-FMD and Doc. No. 5 in Adv. Pro. No. 2:22-ap-049-FMD.)

## II.    ANALYSIS

The legislative history of the Bankruptcy Reform Act of 1978 includes Senate Report 95-989. It states:

> The new Chapter 13 . . . . provide[s] a simple yet precise and effective system for individuals to pay debts under bankruptcy court protection and supervision. The new chapter 13 will permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances.

And the House of Representatives Report 95-595 states:

> The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement.

In *In re Pierre*, 468 B.R. 419, 425 (Bankr. M.D. Fla. 2012), the court stated:

> Chapter 13, as the legislative history sets forth, was created to protect overextended individual wage earners desiring to voluntarily repay their debts through the automatic stay and provide financial relief through a fresh start. . . . Although debtors indeed may use Chapter

---

[5] Under Federal Rule of Bankruptcy Procedure 9027(a)(2), any notice of removal was required to be filed within 30 days after entry of an order terminating a stay, if the claim or cause of action was stayed under § 362.

13 to save their homes, the legislative purpose of Chapter 13 is to maximize recovery to creditors by allowing debtors to cure arrears and make payments over a period of up to 60 months.

Under § 1325, a Chapter 13 plan must be proposed in good faith to be confirmed. The debtor bears the burden of proving that he filed his plan in good faith.

*In re Ogden*, 570 B.R. 432, 435 (Bankr. N.D. Ga. 2017).

In the Eleventh Circuit, it is generally held that the basic good faith inquiry under § 1325(a)(3) is "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal." Primary factors to be considered in the good faith analysis include the debtors' motivations, sincerity in seeking relief, and *bona fides* in dealing with their creditors.

*In re Tiliakos*, 2013 WL 12461130, at *5 (Bankr. M.D. Fla. May 30, 2013) (citations omitted).

Debtor's actions throughout the course of this bankruptcy case demonstrate that he did not file his Chapter 13 case or the Plan in good faith.

First, Debtor did not file the case with the motivation of paying creditors—in fact, he objected to every filed claim in the case; he has demonstrated that he is not sincere in seeking relief under Chapter 13; and he has not shown good faith in dealing with his creditors. Rather, Debtor's actions evidence that his motivation in this case is

to delay and frustrate the many parties with whom he is engaged in contentious litigation, some of whom over the course of the last decade.[6]

And second, nearly two years after Debtor filed his Chapter 13 case, he has not proposed a plan that satisfies the requirements of § 1325 for confirmation.

Having carefully considered the record, the Court will deny the Motion for Reconsideration and concludes that Debtor's case should be dismissed as a bad-faith filing. And in light of the Debtor's multiple bankruptcy filings, the Court finds it appropriate to dismiss the case with prejudice and with a two-year bar against refiling.

Accordingly, the Court directs the Chapter 13 Trustee to submit an order dismissing the case with prejudice as set forth above.

The Clerk's office is directed to serve a copy of this Memorandum Opinion on interested parties via CM/ECF and upon Debtor by U.S. Mail.

---

[6] For further description of Debtor's having "persisted in questionable litigation strategy" and the "15 bankruptcy appeals and five civil cases related to his 2015 [Maryland] bankruptcy action," see the March 23, 2022 Memorandum Opinion and Order, Doc. No. 5 in Case No. GJH-21-1186 in the United States District Court for the District of Maryland.